J. RUSSELL CUNNINGHAM, SBN 130578
NICHOLAS KOHLMEYER, SBN 299087
DESMOND, NOLAN, LIVAICH & CUNNINGHAM
15th & S Building
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsmile: (916) 443-2651

Attorneys for Hank M. Spacone
Plaintiff/Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>JOSEPH CLARK and<br><br>VALERIE CLARK,<br><br>           Debtors. | Case No. 20-23533-A-7<br>Chapter 7 |
| HANK M. SPACONE, in his capacity as Trustee for the Bankruptcy Estate of Clark,<br><br>           Plaintiff,<br><br>vs.<br><br>GM FINANCIAL,<br><br>           Defendant. | Adversary No.: |

## **COMPLAINT**

HANK M. SPACONE ("Trustee"), in his capacity as the Chapter 7 trustee for the bankruptcy estate of JOSEPH CLARK and VALERIE CLARK (collectively "Debtors"), for his complaint against GM Financial alleges:

///

///

## JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1334(b) & (e) in that this is a civil proceeding arising in a parent bankruptcy case and this court has exclusive jurisdiction over all property, wherever located, of the Debtors as of the commencement of the parent bankruptcy case.

2. Venue is proper pursuant to 28 U.S.C. § 1409(a) in that this adversary proceeding arises in a parent bankruptcy case pending in this judicial district.

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), and (K) in that this is a proceeding concerning the administration of the estate and to determine the validity, extent, and priority of interests in estate property.

4. This proceeding is brought pursuant to 28 U.S.C. § 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure.

## GENERAL ALLEGATIONS

5. On July 18, 2020, the Debtors commenced the above-captioned bankruptcy case by filing a voluntary Chapter 7 petition. The Trustee is the duly appointed Chapter 7 trustee for the Debtor's bankruptcy estate

6. Among the scheduled assets of the Debtors' bankruptcy estate is a 2017 Chevy Camaro, VIN: 1G1FG1R79H0146445 ("Camaro"). In their schedules, the Debtors value the Camaro at $37,562.00 and subject to the secured claim of GM Financial in an unknown amount.

7. The Debtors purchased the Camaro on or about June 14, 2017. The Camaro's certificate of origin shows that GM Financial was a lienholder at the time of purchase. A copy of the certificate of origin is attached hereto as **Exhibit A**.

8. On or about July 5, 2017, OE Federal Credit Union issued a loan to the Debtors for the Camaro and satisfied GM Financial's lien on the same. A copy of the loan and security agreement is attached hereto as **Exhibit B**.

9. GM Financial has not filed any claim in the Debtors' case asserting a lien against the Camaro.

10. Although GM Financial's lien was satisfied in 2017, to date it has not released its lien. The Trustee has contacted GM Financial both personally and through counsel to obtain a

release of its lien, however GM Financial has advised that it is unable to locate a record of any lien against the Camaro.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief against the Defendant Determining the Validity, Priority, or Extent of Interest in Property; 28 U.S.C § 2201)

11. The Trustee realleges and incorporates by reference paragraphs 1 through 10 of this Complaint as though fully set forth herein.

12. Pursuant to 28 U.S.C § 2201, a court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is, or could be, sought.

13. GM Financial's lien against the Camaro was satisfied in 2017 and GM Financial has advised that it is unable to locate a record of any lien against the Camaro.

14. The Trustee is entitled to a judgment against GM Financial pursuant to 28 U.S.C § 2201 declaring that GM Financial has no lien, encumbrance, or claim of interest in the Camaro.

**WHEREFORE**, the Trustee prays for judgment against GM Financial declaring that GM Financial has no lien, encumbrance, or claim of interest in the Camaro and for such other and further relief as the court deems necessary and proper.

Dated: October 22, 2020　　　　　**DESMOND, NOLAN, LIVAICH & CUNNINGHAM**

By: /s/ NICHOLAS L. KOHLMEYER
　　**NICHOLAS L. KOHLMEYER**
　　Attorneys for Hank M. Spacone
　　Plaintiff/Chapter 7 Trustee

# Exhibit A

# CERTIFICATE OF ORIGIN FOR A VEHICLE



6376

**RBLPD019**

DATE: 10/04/16
INVOICE NO.: 1AD30633142

VEHICLE IDENTIFICATION NO.: 1G1FG1R79H0146445
YEAR: 2017
MAKE: CHEVROLET

BODY TYPE: CAMARO 2 DOOR COUPE
SHIPPING WEIGHT: 3604

H.P. (S.A.E.): 52.7
G.V.W.R.: 4452
NO. CYLS.: 08
SERIES OR MODEL: 1AK37

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

07114 TSNJKX

MORITZ CHEVROLET, LTD.
PO BOX 121819
FORT WORTH    TX    76121-1819

*Oklahoma Motor Vehicle LIEN ENTERED Date 6-19-17 Receipt No. 10846953 Motor License Agent: 4206*

*Oklahoma Motor Vehicle LIEN ENTERED Date 6/15/17 Receipt No. L/330601884 Motor License Agent: 4206*

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

```
***************
* THIS VEHICLE*
*   HAS A     *
* 50-STATE    *
* EMISSION    *
*  SYSTEM     *
***************
```

GENERAL MOTORS LLC

BY: _(SIGNATURE OF AUTHORIZED REPRESENTATIVE)_    (AGENT)

G74164711

DETROIT    MI 48243-1114
CITY - STATE

GM 521 REV. 10-05

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of the law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than those disclosed herein and warrant title to the vehicle.

FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:

**DISTRIBUTOR-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S): Eskridge
ADDRESS: _____
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER: Moritz Chevrolet LTD  P30166  [signature]
State of: Texas
County of: Tarrant

**DISTRIBUTOR-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S): Joseph Clark or Valerie Clark
ADDRESS: 204 Markham Ave Vacaville CA 95688
I certify to the best of my knowledge that the odometer reading is 250
DEALER: Doyle Eskridge Chevrolet    BY: J Higgins
State of: OK
County of: Logan
[Notary stamp: HEATHER M. ARMSTRONG NOTARY #10001353 EXP. 02/23/18 STATE OF OKLAHOMA]
14 June 2017

**DISTRIBUTOR-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S): Joseph Clark
ADDRESS: 204 Markham Ave Vacaville CA 95688
I certify to the best of my knowledge that the odometer reading is 250
DEALER: Doyle Eskridge Chevrolet    BY: [signature]
State of: OK
County of: Logan
[Notary stamp: HEATHER M. ARMSTRONG NOTARY #10001353 EXP. 02/23/18 STATE OF OKLAHOMA]
14 June 2017

**DISTRIBUTOR-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S): _____
ADDRESS: _____
I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER: _____ BY: _____
State of: _____
County of: _____

**ODOMETER DISCLOSURE FOR RETAIL SALE**

Federal law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or provide a false statement may result in fines and / or imprisonment.
I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading _____ NO Tenths. ☐ The mileage stated is in excess of its mechanical limits ☐ The odometer reading is not the actual mileage. **WARNING ODOMETER DISCREPANCY**

**LIENHOLDER**

1st lien in favor of: GM Financial
whose address is: PO Box 1510 Cockeysville MD 21030
2nd lien in favor of: _____
whose address is: _____

GM521 REV. 1-2000

# Exhibit B

# OE FEDERAL CREDIT UNION

P.O. Box 5073, Livermore, California 94551
800-877-4444

**LOANLINER**

**Loan and Security Agreements and Disclosure Statement**

| [X] FIXED RATE<br>[ ] VARIABLE RATE | LOAN DATE<br>07/05/2017 | LOAN NUMBER<br>142 | ACCOUNT NUMBER<br>412253 | GROUP POLICY NUMBER<br>104-2107-7 | MATURITY DATE<br>07/18/2024 |
|---|---|---|---|---|---|

**BORROWER 1**
NAME AND ADDRESS
JOSEPH THOMAS CLARK
204 Markham Ave
VACAVILLE, CA 95688

**BORROWER 2**
NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)

## TRUTH IN LENDING DISCLOSURE "e" means an estimate

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>**6.240%** | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>**$ 14,051.92** | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>**$ 58,593.63** | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>**$ 72,645.55** e | Total Sale Price<br>The total cost of your purchase on credit is **$ 58,593.63**<br>which includes your downpayment of $ 0.00 |
|---|---|---|---|---|

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 83 | $ 864.84 | MONTHLY 08/18/2017 |
| 1 | $ 863.83 e | 07/18/2024 |

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Demand:** [ ] This obligation has a demand feature.
[ ] All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union. If you get the insurance from us, you will pay $ N/A

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ 0.00 | $ N/A |

**Late Charge:** If a payment is made 11 or more days after your payment due date, a late fee of your monthly payment amount or $10.00, whichever is greater will be assessed on your loan.

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| AUTO | CAMARO 2SS CHEVROLET | 2017 | 1G1FG1R79H0146445 | | $ 46305.00 | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $ _____ In Account No. _____ $ _____ in Account No. _____

**Variable Rate:**

BORROWER 1
X _____ (SEAL)
[ ] OTHER BORROWER  [ ] OWNER OF PROPERTY  [ ] WITNESS   DATE

X _____ (SEAL)
[ ] OTHER BORROWER  [ ] OWNER OF PROPERTY  [ ] WITNESS   DATE

© CUNA Mutual Group 1999, 2000, 01, 02, 03, 04, 06, 08 All Rights Reserved     NXX01A-e

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

## SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign, or otherwise authenticate, as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

*joe clark* _____ (SEAL) Jul 5, 2017
signed Jul 5, 2017                          DATE

X _____ (SEAL)
BORROWER 2                    DATE

Credit Union: Operating Engineers Local Union No 3 FCU     Loan No. 142     Acct. No. 412253
Borrower(s): Joseph Thomas Clark

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $58,593.63 | Amount Given to You Directly $0.00 | Amount Paid on Your Account $0.00 | Prepaid Finance Charge $0.00 |
|---|---|---|---|

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| $58,593.63 | To | GM FINANCIAL | $0.00 | To | |
| $0.00 | To | | $0.00 | To | |
| $0.00 | To | | $0.00 | To | |
| $0.00 | To | | $0.00 | To | |
| $ | To | | $ | To | |
| $ | To | | $ | To | |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you" or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay $58,593.63 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 6.240% per year.

For variable rate loans the initial interest rate is _____ % per year and will vary as follows:

**Collection Costs:**
You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney fees.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. If this is a variable rate loan, the Promise to Pay section tells you whether, if the interest rate increases, you will have to make more payments, higher payments, or if the final payment will be a balloon payment. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fee in your payments or extend the

have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. For all borrowers: You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default. The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if you do not make a payment of the amount required on or default.

term of your loan. If the term is extended, you will be before the date it is due. You will be in default if you break

NXX01A-8

required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you

any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT** - When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in

Credit Union Operating Engineers Local Union No 3 FCU     Loan No. 142     Acct. No. 412253
Borrower(s) Joseph Thomas Clark

## LOAN AGREEMENT (continued)

**7. EACH PERSON RESPONSIBLE** - Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE** - If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT** - You promise to use your account for consumer (personal, family or household) purposes, unless the Credit Union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS** -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**14. OTHER PROVISIONS -**

NXX01A-e

Credit Union Operating Engineers Local Union No 3 FCU　　　　Loan No. 142　　　　Acct. No. 412253
Borrower(s) Joseph Thomas Clark

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

1. **THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

2. **WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. The security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal dwelling. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the Property will secure only this Loan and not other loans or amounts you owe us.

3. **OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

4. **PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

5. **USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for [unlawful purpose]. (7) Not retitle Property in another state [illegible]... our loan agreements or may engage others to do so. The finance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or any unlawful purpose. (7) Not retitle Property in another

without telling us.

6. **PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of

insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

7. **INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

8. **DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

9. **WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

10. **DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

11. **CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

12. **NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY

NXX01A-e

HAVE TO PAY THE DIFFERENCE.

13. **NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ The following notice applies ONLY when the box at left is marked.

14. **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

15. **OTHER PROVISIONS** -